# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **DENNIS DEWAYNE GLADDEN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 4:11-CV-01269-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Dennis Gladden brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act. For the reasons set forth below, the Commissioner's decision is affirmed.

**I.     Proceedings Below**

*A. Procedural History*

Plaintiff filed his application for a period of disability and DIB on October 19, 2007, in which he alleged that disability began on August 10, 2007. (Tr. 70, 121-25). Plaintiff's application was initially denied by the Social Security Administration on December 20, 2007. (Tr. 71-76). Plaintiff requested a hearing on January 25, 2008. (Tr. 79-80). Plaintiff's request was granted and a hearing was held on June 4, 2009, before Administrative Law Judge ("ALJ") Kenneth Wilson. (Tr. 22-69, 96, 120). In his decision, dated September 28, 2009, the ALJ determined that Plaintiff had not been

under a disability, as defined in the Act, from August 10, 2007, his alleged onset date of disability, through December 31, 2007, the date Plaintiff was last insured. (Tr. 21). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

 *B. Facts*

  1. Facts Before the ALJ

Plaintiff alleges that he became unable to work on August 10, 2007, as a result of gunshot wounds to his right knee, left thigh, left index finger, and lower back pain. (Tr. 121-22, 143). Plaintiff last met the insured status requirements of the Act on December 31, 2007. (Tr. 139). As of the date last insured, Plaintiff was forty-five years old. (*Id.*). Plaintiff testified that he has been out of work since "'04 or '05'" and that he was "just taking some time off because [he] had worked . . . for so long." (Tr. 32).

On August 11, 2007, just hours after being shot, Plaintiff underwent surgery on his right knee, left thigh, and left index finger (Tr. 195-98). X-rays of his right lower leg revealed mild degenerative joint disease at the knee, but no significant fracture. (Tr. 205). X-rays of his left femur revealed no acute finding. (Tr. 206). Plaintiff underwent surgery to repair the patellar tendon in his right knee. (Tr. 197). Following the surgeries, Plaintiff's orthopedic surgeon, Dr. George J. Douthit, noted that Plaintiff obtained flexion of his knee up to ninety degrees. (Tr. 201). After continuous improvement, Plaintiff was discharged on August 18, 2007, with prescriptions for pain medication. (Tr. 208). According to Dr. Douthit, Plaintiff continuously showed signs of improvement. (Tr. 225,

230, 248-50, 312-13). In April 2009, Dr. Douthit discontinued Plaintiff's prescription medication, but advised him to continue with physical therapy. (Tr. 353).[1]

Plaintiff also sought treatment for leg and back pain from Dr. Paul Muratta at Southeastern Pain Management ("SPM") on four separate occasions from December 2008 to January 2009. (Tr. 316-24). Records from SPM show that Plaintiff had limited range of motion and decreased motor strength in his right knee post-surgery. (Tr. 320-21). Treatment with epidural steroid injections and pain medications provided approximately 50% relief of his pain. (Tr. 317).

From January to April 2009, Plaintiff underwent various MRIs of his cervical and lumbar spine. These MRIs showed degenerative dehydration of invertebral discs and disc bulging at various levels. (Tr. 330). Plaintiff continuously complained of pain and felt his medications were 60% effective.[2] (Tr. 317-18, 381).

On April 16, 2009, Plaintiff saw Dr. Morton Rickless, an examining physician, for a consultative examination. (Tr. 339). Dr. Rickless noted inconsistencies during the examination and attributed them to questionable efforts by Plaintiff. (Tr. 341). For example, when Dr. Rickless asked Plaintiff to grip his finger with his fist, Plaintiff could make a fist and flex the PIP joint of his injured

---

[1]While he was being treated by Dr. Douthit, Plaintiff was also seeing another orthopedic surgeon, Dr. Kevin Smith. Plaintiff complained to Dr. Smith of "some stinging and burning sensation on the left lower extremities" and was prescribed Lortab. (Tr. 273). As he did with Dr. Douthit, Plaintiff reported to Dr. Smith that his condition was improving and missed several appointments. (Tr. 273-75).

[2]Plaintiff's medications included Opana ER, Restoril, Zanaflex and Mobic. (Tr. 381). Plaintiff also stated that Ibuprofen and Advil, by themselves, provided some pain relief. (Tr. 319, 320).

3

left index finger; but when asked to flex the finger independently, Plaintiff stated that he could not.[3] (Tr. 340, 341). Dr. Rickless also questioned Plaintiff's lack of motion in the right knee, because Plaintiff held his knee stiff and resisted bending the knee. (Tr. 342). Dr. Rickless noted that Plaintiff's range of motion was probably self-limited due to pain. (*Id.*).

Following the examination, Dr. Rickless completed a Statement of Ability to do Work-Related Activities Report. On this report, Dr. Rickless marked that Plaintiff was to never perform postural activities (with the exception of "balancing"), but also, perhaps conflictingly, noted that Plaintiff could shop, travel without a companion, ambulate, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb steps, prepare a simple meal, care for personal hygiene, and handle and sort paper files. (Tr. 346, 348).[4]

In a physical activities questionnaire completed by Plaintiff, he stated that he could not walk or lift, and that his knee and hand problems confined him to a bed or couch, but, at the hearing, he spoke of being able to shop at malls and grocery stores, though with some difficulty. (Tr.151-56, 39).

A vocational expert testified during the hearing that, given Plaintiff's age, education, past relevant work, and RFC,[5] Plaintiff could not perform his past relevant work. (Tr. 58). However, he also testified that an individual in Plaintiff's position would be able to perform the requirements of

---

[3]During his examination with Dr. Rickless, Plaintiff, in addition to being able to make a fist, was able to button and tie shoe laces, pick up objects, hold a glass and turn a doorknob.

[4]In addition to the medical analyses, Plaintiff also underwent a Physical Residual Functional Capacity ("RFC") Assessment on December 19, 2007, administered by the Disability Determination Service ("DDS"). (Tr. 258-65).

[5]An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

certain representative occupations accounting for hundreds of jobs in the State of Alabama.[6]  (Tr. 59-60).

### 2. Facts Submitted Following the ALJ's Decision

Additional evidence tendered to the Appeals Council after the ALJ issued his decision indicates that on August 12, 2009, Plaintiff suffered a fall and an "inversion" of his leg that Plaintiff alleges "further contused his right knee." (Tr. 185).  Review of the x-rays led Dr. Douthit at Northeast Orthopedic Clinic to conclude that Plaintiff's "avusled the anterior aspect of the tibia." (*Id.*).  Plaintiff was able to walk, but had a small open wound that presented a "chronic problem." (*Id.*).

Plaintiff has also tendered to this court evidence of events occurring after the Appeals Council issued its decision.  On March 9, 2011, Plaintiff presented to the University of Alabama-Birmingham ("UAB") Hospital with a right distal fibula fracture and a right open knee joint that reportedly resulted from a fall. (Doc. 5 at 10-11).  Evidence of the UAB Hospital visit served as the basis for Plaintiff's petition before this court to remand for consideration of new material evidence. (*See* Doc. 5 at 1).  This court found that the new evidence submitted by Plaintiff was not material and denied the petition. (Doc. 11 at 1).

### C. ALJ Decision

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)(4).  The ALJ first determines whether the claimant is performing substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is performing SGA, he is not

---

[6]These occupations include stamping machine tender, dryer operator, and service occupation. (Tr. 21).

disabled under the Act. *Id.* The ALJ found that Plaintiff did not engage in SGA between his alleged onset of disability and the date last insured. (Tr. 14).

In step two, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R § 404.1521. If the claimant does not have a severe impairment or combination of impairments, he is not disabled.

The ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, as well as the gunshot wounds to his right knee and left thigh, constituted "severe" impairments. (Tr. 14). The ALJ also found that the gunshot wound to Plaintiff's left index finger constituted only a "non-severe" impairment. (*Id.*). In his determination, the ALJ pointed to the fact that Dr. Rickless noted only a stiffness in Plaintiff's finger, and that Plaintiff had not complained of any continuous pain or significant limitations in his finger. The ALJ concluded that Plaintiff's finger injury could not reasonably be expected to produce more than a minimal work-related limitation. (Tr. 15). Nevertheless, the ALJ's finding that Plaintiff did possess some "severe" impairments necessitated that he proceed to step three.

In step three, the ALJ must determine whether the claimant's impairments "meet[] or equals" the criteria of an impairment listed in Appendix 1, Subpart P of Part 404 of the Code of Federal Regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments meet these criteria, the claimant is automatically determined to be disabled. The ALJ found that Plaintiff's impairments did not meet the criteria.

In his evaluation, the ALJ first considered Plaintiff's severe right knee and left leg impairments. The ALJ analyzed these impairments under the criteria set forth in Listing 1.02, which addresses "Major dysfunction of a joint(s) (due to any cause)." 20 C.F.R. § 404, Subpt. P., App. 1. The ALJ found that since Plaintiff was able to ambulate effectively, he did not meet the criteria for disability under Listing 1.02. (Tr. 15).[7]

The ALJ next considered Plaintiff's severe degenerative disc disease. The ALJ analyzed this impairment under the criteria set forth in Listing 1.04A, which addresses "Disorders of the spine . . ., resulting in compromise of a nerve root" with "[e]vidence of nerve root compression . . . and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. § 404, Subpt. P., App. 1. The ALJ found that Plaintiff did not meet the criteria for disability under Listing 1.04 because there was no evidence of nerve root compression and Plaintiff had consistently shown negative leg raises both sitting and supine. (Tr. 15-16).

As Plaintiff failed to meet the criteria for disability under step three, the ALJ was compelled to move to step four of the disability analysis. Before step four may be administered, the ALJ must first determine the claimant's RFC.[8] In so doing, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. § 404.1520(e). Based upon Plaintiff's symptoms, the extent to which the symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence, 20 C.F.R. § 404.1529, and opinion evidence,

---

[7] Listing 1.02A requires an "inability to ambulate effectively." 20 C.F.R. § 404, Subpt. P., App. 1.

[8] *See supra* note 5.

20 C.F.R. § 404.1527, the ALJ found that Plaintiff could perform a range of "light work" as defined in 20 C.F.R. § 404.1567(b).[9]

In considering Plaintiff's symptoms, the ALJ followed a two-step process. First, the ALJ determined whether there was an underlying medically determinable impairment that could reasonably be expected to produce the symptoms. After determining that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the ALJ evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms to determine the extent to which they limited his ability to do basic work activities. (Tr. 16). The ALJ determined that Plaintiff's statements concerning the limiting effects of his symptoms were not credible to the extent that they were inconsistent with his RFC assessment. (Tr. 17).

The ALJ noted several reasons why Plaintiff's credibility was diminished: medical records show that his right knee was within normal flexion limits; pain in his knee and back was significantly reduced through medication; his wounds were healing well; he continuously stated he was feeling better and missed several follow-up appointments; he was not consistently taking strong pain medications; he sometimes reported severe pain levels but found that Ibuprofen and Advil offered significant relief; and his testimony that he was confined to the couch and bed was belied by his trips to the grocery store and the mall.

---

[9]Section 404.1567(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

Plaintiff alleged that he had limited use of his left hand and could not walk, lift or stand, yet he performed tasks during his exam with Dr. Rickless that require an ability to do all of these actions. Due to these and other inconsistencies in Dr. Rickless' consultative examination and report, the ALJ gave only partial weight to Dr. Rickless' opinion(s), including his recommendation that Plaintiff never perform any postural activity other than balancing.[10]

The ALJ also took into account Plaintiff's statement that he stopped working because he had "worked all his life and was just taking time off." (Tr. 20). This statement suggests Plaintiff stopped working for reasons that are not related to his disability.

The ALJ gave "great weight" to the DDS's RFC assessment. The assessment concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and walk for six hours, sit for six hours, but was limited in pushing and pulling with his lower extremities. (Tr. 19, 259). The only postural limitation it proscribed was climbing ladders, rope, and scaffolds. (Tr. 260). The ALJ adopted those few limitations prescribed by the assessment and added additional limitations that were still consistent with Plaintiff's being able to perform "light work."[11]

Having established an RFC, the ALJ proceeded to the fourth step of the analysis. In step four, an ALJ considers whether the claimant, given his RFC, can perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform his past relevant work, he is not

---

[10] The ALJ found that Dr. Rickless' report "showed the claimant to have greater limitations than what the physical examination may suggest." (Tr. 18).

[11] The ALJ, in his RFC, added that Plaintiff was limited in his ability to handle and finger with his left upper extremity, and that Plaintiff was to avoid extreme cold, extreme humidity and wetness. (Tr. 16).

9

disabled. 20 C.F.R. § 404.1520(f). Accepting the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could not perform past relevant work. (Tr. 20).

The fifth and final step of the analysis requires the ALJ to determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work, he is disabled. 20 C.F.R. § 404.1520(a)(4)(v). Having found that Plaintiff was not capable of performing the "full range" of light work, the ALJ asked the VE whether jobs exist in the national economy for an individual of Plaintiff's age, education, work experience, and RFC. The VE provided the ALJ with several examples of jobs available by the hundreds in the State of Alabama and by the thousands nationally to which Plaintiff could successfully transition.[12]

Having found that Plaintiff was capable of making a successful transition to other work, the ALJ determined that Plaintiff was not under a disability as defined by the Act at any time between August 10, 2007 and the date last insured, December 21, 2007. (Tr. 21).

## II.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or, in the alternative, remanded for further consideration. (Doc. 1 at 1). Plaintiff argues that: 1) the ALJ's finding that he is not disabled is not supported by substantial evidence and that the ALJ applied an erroneous standard of law; and 2) that the ALJ misapplied the law. *Id.* Specifically, Plaintiff claims that the ALJ denied his petition for benefits because the ALJ deemed his testimony to be less than credible. (Doc. 14 at 3). Plaintiff claims that new evidence supports his credibility to the extent that the revised record fails to establish substantial evidence that his testimony was not credible.

---

[12]*Supra* note 6.

**III.     Standard of Review**

Judicial review of disability claims under the Act is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

**IV.     Discussion**

First, the court considers whether the ALJ's credibility findings were supported by substantial evidence. Finding that they were, the court will then address Plaintiff's claims that post-hearing evidence submitted necessitates a remand.

   **A.     Whether the ALJ's Credibility Finding is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred by discrediting his testimony. (Doc. 14 at 3). The standard for subjective complaints of pain or other symptoms requires a showing of the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Although such evidence itself is sufficient for a finding of disability, the ALJ may elect not to credit the claimant's subjective complaints. *See id.* If the ALJ discredits a claimant's subjective description of his condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). However, if the ALJ discredits a claimant's testimony, he must do it head on; that is, the ALJ must explicitly discredit the testimony and must articulate the reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

Here, the ALJ specifically found that Plaintiff's complaints of pain and impairments were not corroborated by the objective evidence in the record. (Tr. 17). While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, he also found that Plaintiff's statements concerning the intensity, persistence and limiting

effects of the symptoms were not credible to the extent that they were inconsistent with his RFC assessment. (*Id.*).

A review of the record demonstrates that substantial evidence supports the ALJ's findings which discredited Plaintiff's subjective complaints. As noted above, Plaintiff's physicians consistently noted that his condition was improving; his pain was significantly relieved without strong medication; he cancelled several medical appointments; and his testimony as to the debilitating nature of his pain conflicts with the tasks he was able to perform with Dr. Rickless, as well as his testimony that he is able to shop at the mall and the grocery. Additionally, Plaintiff's testimony suggests that his unemployment was voluntary — that he was just "taking time off" — rather than a result of his disability. This evidence provides substantial support for the ALJ's credibility determination in this case. The ALJ explicitly discredited the testimony for these reasons. (Tr. 17-20).

**B. Whether the Introduction of Plaintiff's Evidence Arising After the ALJ Hearing Undermines the ALJ's Credibility Finding.**

Plaintiff relies on medical evidence concerning his treatment following the Appeals Council's decision to deny review of the ALJ's decision. (Doc. 14 at 2-3). When the Appeals Council has denied review, the court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Furthermore, 42 U.S.C. § 405(g), *i.e.*, sentence six, provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in district court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir.

2007).[13] The district court may also review evidence not before an ALJ if it is "new and material," the Appeals Council refused to consider it, and the Appeals Council's refusal amounted to an error of law. *See Falge*, 150 F.3d at 1323-24.

Plaintiff submitted evidence of two separate events that occurred following the ALJ hearing, both involving falls that Plaintiff reportedly suffered and his subsequent treatment. "Fall Number One" occurred on August 12, 2009. (Doc. 12 at 20). Plaintiff was treated by Dr. Douthit at the Northeast Orthopedic Clinic. (*Id.*). Plaintiff submitted the medical records to the Appeals Council, but since the Appeals Council considered this evidence in its decision to deny review, the court is precluded from considering it when reviewing whether the ALJ's decision was based on substantial evidence. *See Ingram*, 496 F.3d at 1320. Even if the court were permitted to consider this evidence, however, it agrees with the Appeals Council that, since Plaintiff's disability insurance ended on December 31, 2007, a fall taking place in August 2009 is irrelevant to the question that was before the ALJ: whether Plaintiff was disabled *at the time he was last insured*. (*See* Tr. 2). Furthermore, records concerning Fall Number One do not undermine the ALJ's credibility finding because nothing in them demonstrates how Plaintiff's impairments caused work-related limitations beyond those already addressed by the ALJ.

"Fall Number Two," which reportedly occurred on March 10, 2011, one month after the Appeals Council issued its decision, was properly presented to the court in Plaintiff's Submission of Evidence and Petition of Remand Pursuant to 42 U.S.C. § 405(g). (Doc. 5). The court dealt with

---

[13]Sentence six provides, "The court may . . . at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

and disposed of the issue when it denied his petition. Due to the lack of evidence connecting Fall Number Two to Plaintiff's disability claims as presented to the ALJ, the court determined the new evidence was not "material." (*Id.* at 4).[14] Now, despite the court's determination that this new evidence is not material, Plaintiff claims that the new evidence bolsters the credibility of his testimony to such an extent that it undermines the ALJ's decision. In other words, Plaintiff asks the court to decide that evidence it has already deemed immaterial is, actually, material. At best this argument is a basis for remand, not reversal. A "sentence six" petition is the sole avenue for remand based on new evidence before a district court. *See Ingram*, 496 F.3d at 1267. Plaintiff is simply not entitled to relief on this claim.

**V.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff was not disabled during the period insured is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

---

[14]The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of the[] symptoms are not credible to the extent they are inconsistent with the . . . residual functioning capacity assessment." (Tr. 17). This finding was based on a review of all the objective medical evidence before the ALJ at the time, and was directly related to Plaintiff's condition at that time of the decision below, unlike the additional evidence presented here. The court cannot conclude that Plaintiff's March 2011 injury bolsters the credibility of his prior testimony about events in 2007. But even if it did, the ALJ's decision was based more on objective medical evidence being in conflict with Plaintiff's testimony as opposed to conflicts within Plaintiff's testimony itself. So even if the ALJ had a different view of Plaintiff's credibility, that would not — with any reasonable probability — have changed the administrative result. (Doc. 11, p. 4).

**DONE** and **ORDERED** this \_\_\_\_5th\_\_\_\_ day of July, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE